UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRED LUKPETRIS,

    Plaintiff,

                                                      Case No. 5:05-cv-181

v.                                                 Hon. Hugh W. Brenneman, Jr.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
                                                   /

**OPINION**

Plaintiff Fred Lukpetris (sometimes referred to as Mr. Lukpetris) has filed suit contesting the termination of his long disability benefits by defendant Hartford Life and Accident Insurance Company (sometimes referred to as "Hartford"). Plaintiff alleges that Hartford improperly terminated his long term disability ("LTD") benefits under his employer's disability plans and breached its fiduciary duty under § 502 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1132.

    **I.**    **Standard of Review**

This matter is now before the court on the parties' cross-motions for summary judgment on the administrative record (docket nos. 19 and 21). The court's review of an action taken by a plan administrator or trustee under ERISA is "based solely upon the administrative record." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). In undertaking this review, "[t]he district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator." *Id.*

The parties agree that under the terms of the disability policy, Hartford had the discretionary authority to determine eligibility for benefits and construe the terms of plan (AR 298)[1]. This court applies the "arbitrary and capricious" standard of review to an ERISA plan administrator's decision regarding benefits where the plan administrator is given such discretionary authority. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Whitaker v. Hartford Life and Accident Insurance Company*, 404 F.3d 947, 949 (6th Cir. 2005). Under this standard of review, "[t]he administrator's decision must be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Whitaker*, 404 F.3d at 949 (internal quotation marks omitted).

## II.     Background

Plaintiff, an employee at ASIMCO Camshaft Specialties, Inc. ("ASIMCO"), applied for short-term disability benefits through Hartford in December 2003 (AR 251-53). At that time, plaintiff worked as a "cell operator," a job which required: continuous standing, walking, and reaching/working overhead; working with 15 to 26 pound camshafts; and being on his feet "100% of the time" (AR 248-49).

On December 23, 2003, Katrina Olson, M.D., completed an attending physician's statement ("APS"), which noted a diagnosis of herniated disc at L5-S1, with back pain and radiating pain (AR 254). Dr. Olson indicated that plaintiff suffered from a "moderate limitation of functional capacity" and was "capable of clerical/administrative (sedentary) activity" described as follows:

> (Lifting 10 lbs. maximum and occasionally lifting and/or carrying articles. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.)

(AR 254).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

In an APS dated March 31, 2004, Physician's Assistant Theodore Dorsey listed the following restrictions: no lifting over 15 pounds; "must have option to sit or stand while working;" and "no repetitive bending over" (AR 230). P.A. Dorsey noted plaintiff's "treatment plan" as "Pain Clinic -- seeing neurosurgeon" (AR 230).

In a letter dated April 9, 2004, Hartford notified plaintiff that his short-term disability ("STD") benefits were approved through April 18, 2004, that he needed to update his medical information to receive benefits after that date, and that the STD would continue through June 17, 2004 (AR 226). The letter also advised plaintiff that "[i]f it is expected that your disability will extend beyond 6/17/04, the enclosed Long Term Disability Income Benefits Questionnaire (yellow form) must be completed and returned to our office" (AR 226). Plaintiff completed his LTD benefit application on May 4, 2004 (AR 207-11, 215-16). In a letter dated June 23, 2004, Hartford advised plaintiff that it had extended the STD benefits through June 17, 2004 and approved his claim for LTD benefits with an effective date of June 18, 2004 (AR 30).

On June 10, 2004, Kimball M. Pratt, M.D., performed back surgery on plaintiff, which consisted of a "Left L5-S1 microlumbar discectomy" (AR 160-61).

On August 13, 2004, Hartford determined that plaintiff was not a good candidate for rehabilitation "considering his age, limited work history, and limited restrictions" (AR 15).

Approximately four months after the surgery, Dr. Olson submitted an APS which indicated that plaintiff's condition had improved significantly since his surgery. Dr. Olson found that plaintiff had "no restriction" in standing, walking, sitting, reaching/working overhead, driving, and keyboard use/repetitive hand motion (AR 114). Plaintiff could lift or carry 10 pounds constantly and 20 pounds occasionally, and push or pull 50 pounds (AR 114-15). Plaintiff could perform the following activities in an 8-hour workday: sit 8 hours; stand 6 hours; walk 6 hours; and drive 8 hours

3

(AR 115).  Although plaintiff could never climb or balance, he could occasionally stoop, kneel, crouch and crawl (AR 115). Dr. Olson noted that plaintiff had the following restrictions: "should have the ability to change positions for comfort - [i.e.] sitting/standing - no frequent bending at waist" (AR 114).

In November 2004, a Hartford claims examiner felt that plaintiff "may be a good Rehab candidate, if he is motivated in that direction" (AR 17).

In a letter dated December 6, 2004, Hartford advised plaintiff that he had received overpayments for LTD benefits in the amount of $6,275.00, due to an award of Social Security Disability (SSD) benefits that commenced in July 2004 (AR 102, 105).  Under the Hartford benefit plan, plaintiff's LTD benefits were subject to being reduced by the SSD benefits (AR 105).

Plaintiff was referred for a "Rehab Review" on December 9, 2004 "to see if ER can accomodate [sic] or if EE can RTW to another occupation.  EE complains that back pain radiating down the left leg keeps him from performing the duties of his own occupation. . .  His medical records make note that he has a history of heavy drinking" (AR 19).  The records indicate that Hartford employees attempted to contact plaintiff on the following dates: December 7, 2004 (received no answer and was "[u]nable to leave a msg") (AR 18); December 9, 2004 ( "attempted to call EE but there was no answer and no way to leave a message") (AR 19); December 30, 2004 (left a message with comment that "[i]f I do not get a response from this message then I will send a letter") (AR 20); January 25, 2005 ("No answer.  I will send a letter and follow up in 2 weeks") (AR 20).

Ms. Mollie E. Newhouse, a claims rehabilitation specialist,[2] sent a letter to plaintiff dated January 25, 2005, asking plaintiff to contact her regarding his rehabilitation. The letter stated in pertinent part as follows:

> Based on my recent review of your file, I would like to request that you give me a call at your earliest convenience. I have attempted to contact you several times via telephone without success.
>
> I would like to discuss your vocational options with you, including your skills, interests and plans for the near future. We can also discuss how The Hartford might be able to assist you in returning to gainful employment.
>
> The Hartford is committed to assisting its'[sic] claimants in reaching the highest level of self-sufficiency possible. Your LTD policy has these Vocational Rehabilitation services available to you at no cost and these services are an integral part of your on-going LTD claim.
>
> In the meantime, I invite you to call me at 1-800-752-9713 ext. 66324 within the next week to discuss your interests and present status. I look forward to hearing from you.

(AR 46).

After plaintiff failed to respond to her request, Ms. Newhouse sent him a second letter dated February 3, 2005, which explicitly advised plaintiff that the disability policy required him to participate in rehabilitation planning:

> This letter is concerning your long-term disability benefits.
>
> I have made a couple of attempts to reach you by phone without success and have not received a response from my letter of 1/25/2005.
>
> The Hartford would like to start some vocational rehabilitation planning with you. Your disability policy requires your participation in rehabilitation planning. Following is the policy language regarding your benefits and participation at rehabilitation:

---

[2] Hartford identifies Ms. Newhouse as a rehabilitation specialist in its brief. *See* Defendant's Brief at 6.

> When will benefit payments terminate?
>
> 8. The date you refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
>
>> a) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential Duties of Your Occupation;
>>
>> b) adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the Essential Duties of Your Occupation;
>>
>> c) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential Duties of Any Occupation, if you were receiving benefits for being disabled from Any Occupation; or
>>
>> d) adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the Essential Duties of Any Occupation, if you were receiving benefits for being disabled from Any Occupation.
>
> In closing, I'd like you to contact me before 2/17/2005 to start some vocational rehabilitation planning. You may reach me at 1-800-752-9713 ext. 66324. Failure to do so may result in the loss of your long-term disability benefits.
>
> I look forward to talking with you.

(AR 47-48).

After plaintiff failed to respond to the second letter, Hartford sent him a third letter advising him that the LTD benefits were terminated due to his failure to cooperate in the rehabilitation program:

> We have completed our review of your claim for benefits and have determined that you have refused to participate in a Rehabilitation Program. Because

6

of this, Long Term Disability (LTD) benefits are not payable beyond February 28, 2005.

\* \* \*

We based our decision to deny your claim on policy language. All the papers contained in your file were viewed as a whole.

We received an Attending Physician's Statement and Physical Capacities evaluation from Dr. Katrina Olson which were completed on October 26, 2004. The documentation indicates that you have a herniated L5-S1 disc causing back pain which radiates down your left leg. You underwent a microdiscectomy in June 2004. You have improved since that time. On the Attending Physician's Statement she indicated that you have no restrictions for standing, walking, sitting, reaching, driving or keyboarding. You are able to lift and carry 20 lbs. You can push and pull 50 lbs. You are unable to frequently bend at the waist. You should have the ability to change positions for comfort. The Physical Capacities Evaluation states that in an 8 hour workday, you can sit for 2 hours at a time for approximately 8 hours per day. You can stand and walk for one hour each for approximately 6 hours each per day. You can drive for 4 hours at a time for a total of 8 hours per day. You can constantly lift 10 lbs., occasionally up to 20 lbs. You can constantly push and pull 10 lbs., frequently 20 lbs. and occasionally up to 50 lbs. You are unable to climb or balance. You can occasionally stoop, kneel, crouch and crawl. You can frequently reach above shoulder level and can constantly reach at and below waist level. You can constantly handle, finger and feel. You can repetitively use your hands and feet. You have no environmental restrictions. Dr. Olson states, "The patient may need to be able to rest periodically and to change position for comfort, ie: sit, stand, walk around."

You received Long Term Disability benefits because you are unable to perform the duties of Your Occupation as a Cell Operator. Because you are capable of functioning at the level described above, you must participate in a program of Rehabilitation to continue to receive Long Term Disability benefits.

A Vocational Rehabilitation Clinical Case Manager attempted to contact you to discuss Rehabilitation by phone on December 9, 2004 and December 30, 2004. We also sent letters requesting that you contact us on January 25, 2005 and February 3, 2005. In the February 3, 2005 letter we advised you that your Long Term Disability benefits may be terminated if you did not participate in Rehabilitation. To date, we have not received a response from you.

We considered all of the evidence in your claim file when making our decision. As described above, you have not cooperated with the development of a Rehabilitation plan. Because of this we must terminate your claim for LTD benefits.

\*     \*     \*

>    The Employment Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter. Your appeal letter should be signed, dated and clearly state your position. Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.
>
>    Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will advise you of our determination. After your appeal, and if we again deny your claim, you then have a right to bring a civil action under Section 502(a) of ERISA.

(AR 94-96).

On March 16, 2005, plaintiff left a voice-mail message for Hartford, which was transcribed as follows:

>    indicating that he received the letter and spoke to his atty. Atty advised him to contact us to find out what is going on. He stated that it is not his fault if we don't leave msgs on his machine.

(AR 21). That same date Hartford left a message "on machine for clmt advising that if he disagrees with our opinion he will need to appeal as directed in the termination letter" (AR 21).

In a letter dated May 12, 2005, plaintiff's counsel, Attorney Chris Slater, contacted Hartford requesting a copy of the administrative record and expressing an intent to appeal the termination of benefits (AR 90-92). In this letter, counsel stated:

>    I am hereby also making my client available for the Rehabilitation Program immediately. Please coordinate the same through my office.

(AR 90).

Plaintiff's counsel submitted a one-page "formal appeal" dated July 11, 2005, which stated the basis for the appeal as follows:

> As you know, the basis for the denial of benefits beyond 2/25/05 is that Mr. Lukpetris refused to cooperate with the vocational rehabilitation program. I indicated to you in my letter of May 12, 2005, that he was ready, willing and able to participate in this program. I also indicated my willingness to coordinate the development of this program through my office. To date, I have not heard any response.

(AR 87). The balance of counsel's letter consisted of calculations regarding the SSD overpayment and two settlement demands. Counsel submitted an offer to settle the case for a cash payment $20,000.00 "over and above forgiveness" of the overpayment. In the alternative, counsel suggested that Hartford contact him "so that the rehabilitation program can be initiated and so that monthly wage loss benefits are resumed" (AR 87). This "formal appeal" contained no explanation for plaintiff's failure to respond to Hartford's communications, no explanation for his failure to participate in the rehabilitation program from December 7, 2004 through May 12, 2005, and no argument that Hartford's decision to terminate LTD benefits was "arbitrary and capricious."

In a letter dated July 15, 2005, Hartford advised plaintiff's counsel that it would make an appeal decision within 45 days pursuant to ERISA requirements (AR 86).

Hartford issued its appeal decision on July 29, 2005 (AR 83-84). The letter denied the appeal, providing in pertinent part as follows:

> As Mr. Lukpetris was advised, the Policy required him to participate in a Rehabilitation Program. Despite numerous attempts to contact Mr. Lukpetris, we did not receive any response from him until after his benefits were terminated. Likewise, although your May 12, 2005 and July 11, 2005 letters indicated that Mr. Lukpetris was available for a Rehabilitation Program, no plausible explanation was given as to why Mr. Lukpetris failed to cooperate with our initial requests. As such, although Mr. Lukpetris was given numerous opportunities to participate in a Rehabilitation Program, he chose not to do so, even after being advised that his failure to participate may result in the loss of his disability benefits. Therefore, he no longer continued to satisfy the provisions of the Policy as of March 1, 2005 and any willingness to

comply with the Policy provisions after that time is irrelevant, unless extenuating circumstances existed. In Mr. Lukpetris's case, we were not advised of or aware of any extenuating circumstances.

In conclusion, we have considered the provisions of the Policy and the documentation contained in Mr. Lukpetris's file viewed as a whole. As such, we are upholding our prior decision to terminate his LTD benefits.

(AR 84).

Based upon these facts, plaintiff has filed a two-count complaint in this court. In Count I, plaintiff seeks to reverse Hartford's decision to terminate his LTD benefits. This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In Count II, plaintiff claims that Hartford breached its fiduciary duties, and seeks equitable relief pursuant to 29 U.S.C. § 1132(a)(3), which authorizes a a participant "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

### III. Discussion

### A. Plaintiff's claim to recover benefits (Count I)

#### 1. The termination of benefits was not arbitrary and capricious

Based upon a review of the administrative record, the court finds that Hartford's decision to terminate plaintiff's LTD benefits was not arbitrary and capricious, but rather "the result of a deliberate, principled reasoning process and . . . supported by substantial evidence." *Whitaker*, 404 F.3d at 949 (internal quotation marks omitted). The administrative record reflects that plaintiff's condition improved significantly after his back surgery. By October 2004, Dr. Olson felt that plaintiff could perform a number of work-related activities. The administrative record reflects

that Hartford attempted to contact plaintiff several times, left him one telephone message and sent him two letters regarding his need to cooperate in developing a rehabilitation plan. Nevertheless, plaintiff did not respond until more than two weeks after the termination of his benefits. Plaintiff's appeal of the decision had no substance. Rather than attempt to explain his failure to respond to Hartford's communications, or argue that Hartford's decision was "arbitrary and capricious," the one-page "formal appeal" consisted of little more than settlement demands.

In his "supplemental brief" filed in this suit, plaintiff contends for the first time that Hartford's decision was arbitrary and capricious because "a 25 day lapse in communication between Plaintiff and Defendant was incorrectly labeled as a refusal to cooperate." Plaintiff's Supp. Brief at 4. The gist of plaintiff's argument is that he did not receive any communication from Hartford before the February 3, 2005 letter and that his failure to respond was not a refusal to cooperate. Plaintiff's claim is without merit. The administrative record reflects that plaintiff received a telephone message on December 30, 2004, and that Hartford sent him a letter on January 25, 2005. Nothing in the record indicates that plaintiff did not receive the letter. Plaintiff chose not to respond until March 16, 2005, after he had seen an attorney, and more than two weeks after Hartford terminated his LTD benefits. Furthermore, plaintiff did not offer to participate in the rehabilitation program when he contacted Hartford in March 2005; rather, plaintiff's counsel did not make him "available" for the rehabilitation program until two months later. Based on this record, it appears that plaintiff made no timely attempt to cooperate with Hartford with respect to the Rehabilitation Program.

### 2.    Plaintiff has no basis for an independent conflict of interest claim

Next, plaintiff contends that the court should consider Hartford's "clear conflict of interest situation" created by its grant of discretionary authority. Specifically, plaintiff maintains that "Hartford wrote the policy to grant itself the discretion to determine whether it is required to pay disability benefits," and "then used the discretionary authority it had given to itself to terminate Mr. Lukpetris' long-term disability benefits." Plaintiff's Brief at 7.

Hartford's position as both the issuer of the policy and the administrator of the ERISA plan is an insufficient basis to establish a conflict of interest claim. *Osborne v. Hartford Life and Accident Insurance Company*, 465 F.3d 296, 300 (6th Cir. 2006). This court can properly reject such a claim, unless plaintiff provides "significant evidence" that the alleged conflict influenced Hartford's decision to terminate benefits. *Id.* Here, plaintiff has presented no such evidence. The administrative record reflects that Hartford reasonably relied on the medical evidence and the policy terms that required plaintiff to participate in a rehabilitation program. Accordingly, the court rejects plaintiff's conflict of interest claim.

### 3.    Social Security disability determination

Next, plaintiff contends that he was not a good candidate for rehabilitation because the Social Security Administration ("SSA") found him disabled in July 2004. As an initial matter, Hartford was not bound by the agency's disability determination. *See Whitaker*, 404 F.3d at 949 ("an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan"). Furthermore, the SSA made this disability finding approximately one month after plaintiff's surgery in June 2004. At that time, plaintiff was receiving LTD benefits and was not considered to be a candidate for rehabilitation. Three months later, Dr. Olson's APS reflected a substantial improvement in plaintiff's condition. The record reflects that

Hartford considered plaintiff's post-surgical improvement in determining that he was a candidate for the rehabilitation program.

### 4. Hartford's compliance with 29 C.F.R. § 2560.503-1(g)(iii)

Next, plaintiff contends in his supplemental brief that Hartford's February 28, 2005 termination letter failed to comply with the requirements of 29 C.F.R. § 2560.503-1(g)(1)(iii),[3] which provides in pertinent part as follows:

> [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination... The notification shall set forth, in a manner calculated to be understood by the claimant --
>
> \* \* \*
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[.]

Specifically, plaintiff contends that the termination letter violated § 2560.503-1(g)(1)(iii) because it "contained no statements describing additional material information necessary to perfect his claim." Plaintiff's Supp. Brief at 3.

This regulation was promulgated pursuant to 29 U.S.C. § 1133, which states in pertinent part that a plan shall:

> (1) provide that adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

---

[3] Plaintiff incorrectly cites this regulation as 29 C.F.R. § 2560.503-1(g)(iii).

29 U.S.C. § 1133.

The issue of whether an ERISA fiduciary followed the procedural requirements of § 1133 is a legal question subject to *de novo* review by this court. *Kent v. United of Omaha Life Insurance Company*, 96 F.3d 803, 806 (6th Cir. 1996); *Dutton v. Unum Provident Corporation/The Paul Revere Company*, 170 F. Supp. 2d 754 (W.D. 2001). The Sixth Circuit has adopted a rule requiring "substantial compliance" with ERISA's procedural requirements under § 1133. *Kent*, 96 F.3d at 808; *Dutton*, 170 F. Supp. 2d at 759.

> Under this rule, "when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." [*Kent*] at 807 (citing cases). The Kent court explained that the purposes of § 1133 are to insure that the claimant understands the reasons for the denial of the claim as well as her rights to review of the decision. *Id.* In evaluating whether there has been substantial compliance with these purposes, the court should consider all of the communications between the claimant, her counsel, and the insurer. *Id.*

*Dutton*, 170 F. Supp. 2d at 759.

After reviewing the administrative record, the court concludes that the claim communications as a whole are sufficient to fulfill the purposes of § 1133. Plaintiff's contention that Hartford failed to inform him of the additional information necessary to perfect his claim for the appeal is without merit. Here, Hartford sent plaintiff three letters explaining the requirement that he participate in the rehabilitation program. Hartford's February 28, 2005 letter advised plaintiff that his LTD benefits were terminated because he refused to participate in the rehabilitation program. Plaintiff's counsel reviewed the letter, requested a copy of the administrative record and then perfected the claim by filing a one-page appeal letter, which consisted primarily of settlement demands. Hartford reviewed the appeal and rejected it. The notice requirements of § 1133 did not require Hartford to advise plaintiff of additional information that it deemed necessary to win his

appeal. *Terry v. Bayer Corp.*, 145 F. 3d 28, 39 (1st Cir. 1998); *Dutton*, 170 F. Supp.2d at 760. The regulations only required that Hartford "describe what is required to 'perfect the claim,' and that is not synonymous with 'win the appeal.'" *Dutton*, 170 F. Supp. 2d at 760-61, *citing Terry*, 145 F.3d at 39.

### B. Plaintiff's breach of fiduciary duty claim (Count II)

Finally, in Count II, Mr. Lukpetris seeks relief against Hartford for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3). While an ERISA participant can seek equitable relief against a plan administrator under § 1132(a)(3), a participant cannot seek equitable relief for a breach of fiduciary duty under this "catchall provision" if the alleged violations are adequately remedied under other provisions of § 1132. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 454 (6th Cir. 2003). In Count I, plaintiff seeks to recover benefits as specifically authorized by § 1132(a)(1)(B). He cannot maintain a separate cause of action for a breach of fiduciary duty under § 1132(a)(3). *See Wilkins*, 150 F.3d at 616. Accordingly, Count II will be dismissed.

### IV. Conclusion

Accordingly, defendant's motion for summary judgment (docket no. 19) is **GRANTED** and plaintiff's motion for summary judgment (docket no. 21) is **DENIED**.

Judgment on the administrative record will be granted in favor of defendant. A Judgment Order consistent with this opinion will be issued forthwith.

Dated: May 29, 2007  /s/ Hugh W. Brenneman, Jr.
Hugh W. Brenneman, Jr.
United States Magistrate Judge